UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
RODERICK GUNN,              14 Civ. 3228(WPH)
        Petitioner,    :    Indictment No.:06 Cr 0911 (WPH)

        -against-     :    AFFIDAVIT

UNITED STATES OF AMERICA,   :
        Respondent.
                          :

                          :
-----------------------------------------------------------X

      MITCHELL DINNERSTEIN, an attorney licensed to practice in the State of New York and before the bar of this Court, does hereby declare the following under penalties of perjury:

    1. On August 28, 2007, I was appointed to represent the Petitioner, Roderick Gunn, in the case *USA v. Alton Davis, et. al., 06 CR 911*, as Learned Counsel, in accordance with the applicable provisions of the Criminal Justice Act. Lead Counsel for Mr. Gunn was Richard Palma.

    2. Mr. Gunn was charged in a multiple count Racketeering Indictment with Alton Davis, Derilynn Needham and Ronald Knibbs. The charges in the indictment included, *inter alia*, the use of firearms which caused the death of a person pursuant to Title 18 USC § 924(j)(1). The case was originally designated by the Government as a potential death penalty case.

    3. On or about August 17, 2009, the Government indicated that it would not seek the death penalty in this case against Mr. Gunn. Upon a request by Lead Counsel, Richard Palma, this Court assigned me to continue in my representation of Mr. Gunn as Associate Counsel.

    4. A jury trial was commenced on April 19, 2010. Both Davis and Gunn went to trial. Needham and Knibbs became cooperating witnesses for the Government. Both Davis and Gunn were convicted of all counts on May 3, 2010.

    5. On August 20, 2010, Mr. Gunn was sentenced to Life Imprisonment.

1

6. On April 28, 2014, Mr. Gunn filed a Motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence for a person in federal custody. Mr. Gunn filed a nineteen page memorandum of law in support of his motion stating basically two grounds, one, that Mr. Gunn is factually and legally innocent and second, that he received ineffective assistance of counsel. Under the second ground, *inter alia,* Mr. Gunn questioned my effectiveness. (Defendant Gunn's Memorandum of Law, pp. 17-18)

7. On June 12, 2014, this Court ordered that I should give "sworn testimony in the form of an affidavit addressing the allegations of ineffective assistance of counsel" made by Mr. Gunn. The Court in its order indicated that Mr. Gunn "had waived the attorney-client privilege".

8. As directed by this Court, I am now responding to Mr. Gunn's claim that I did not provide him with effective representation.

9. Mr. Gunn's ineffectiveness claim against me is that I should have cross examined a "Tool Mark examiner Gregory Kless at his trial". Mr. Kless, an expert witness for the Government testified during the trial on April 27, 2010. (Gunn Memorandum, p. 17) I declined to cross examine Mr. Kless at the trial. On April 26, 2014, I did conduct a cross examination of Mr. Kless at a *Daubert* hearing outside of the presence of the jury.

10. I believed that it would not have been a wise strategic decision to cross examine Mr. Kless's during the trial as Mr. Gunn argues in his motion. In fact, it my view, it would have been counterproductive. The Government called Mr. Kless to testify that plastic ties that were recovered from the victim of the homicide had markings that *resembled* plastic ties that were cut by the same manufacturing tool that were found in Mr. Gunn's van. (Trial Testimony, p. 1310) It was the defense view that the plastic ties found in the van were not unique and that the testimony by Mr. Kless that the ties may have been manufactured by the same tool was not significant. The Government simply did not demonstrate that these ties were so unique that it provides much

2

evidence that Mr. Gunn provided plastic ties during the crime. It was the defense position that even if the plastic ties found in the van came from the same tool as the plastic ties found by the victim, it would not provide a link that the ties were so unique to prove that the ties by the victim's body meant that Mr. Gunn provided them.

11. It should be noted that Mr. Kless viewed the plastic ties some six years after the crime occurred. It was my view that this fact alone diminished any evidentiary value that he could offer.

12. At the *Daubert* hearing, Mr. Kless testified that he went to the factory where the plastic ties were manufactured in 2010, several years after the crime, and learned how they were made. At the hearing, I cross examined Mr. Kless about what he had learned about the tools used in their manufacture from 2010. (Hearing Testimony, pp. 1065-1076) I had learned at the hearing that the company (Panduit)[1] that manufactured the ties had certain protocols that might have suggested a link between the plastic ties recovered from different locations. Before Mr. Kless's trial testimony, the Government indicated that it would not elicit evidence that Kless had visited the plant or what he learned from that visit. (Trial Testimony, p. 1297) My cross examination would have caused more damage by potentially opening the door to the introduction of damaging hearsay testimony as to Kless's examination at the plant. It seemed a better strategy to leave the plastic tie issue alone, arguing that there was nothing distinctive about these ties found and therefore, there was no actual evidentiary value to Kless's testimony.

13. While Mr. Gunn was correct that the Government argued that this evidence was significant in its summation, I do not believe it should have or did carry any weight with the jury. The defense position was that the plastic ties were irrelevant. Those ties were simply not unique enough to support the Government conclusion. Therefore, Gregory Kless, the tool mark expert's

---

[1] The brand name "Panduit" was on both the ties found in Mr. Gunn's van and the victim.

testimony did not help the Government prove that Mr. Gunn was guilty. It is my view that cross examination of the tool mark expert would have been unhelpful, based on the Government limiting Kless's testimony, and even potentially counterproductive.

14. I believe that this affidavit satisfies the Court's Order that I respond to Mr. Gunn's claim that I was ineffective in failing to confront this witness. In the event the Court needs further submissions, please contact me at your convenience.

15. I make all of these statements under penalties of perjury pursuant to 28 U.S.C. Section 1746.

Dated:   New York, New York
         July 31, 2014

_____
MITCHELL DINNERSTEIN