UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

_____X

RODERICK GUNN,

                Petitioner,       14 Civ. 3228 (WHP)

                                 06 Cr. 911 (WHP)

         vs.

UNITED STATES OF AMERICA,

         Respondent.

_____X


PETITIONER'S REPLY TO UNITED STATES

OPPOSITION TO § 2255 PETITION



POINT I. MURDER CONVICTION IS INFIRM AND CANNOT

BE SUSTAINED UNDER THE FIFTH AMENDMENT

Viewed in light of <u>Glenn v. United States</u>, 312 F.3d 58 (2d Cir 2002), Count Seven conviction is unconstitutional under the Fifth Amendment Due Process Clause.

A. <u>The Fifth Amendment Glenn Error Has Created A Fundamental Miscarriage Of Justice</u>

Contrary to Respondent assertion in its Brief in Opposition (Res. Br. 20), this claim is not barred by the case doctrine. On appeal Gunn challenged the insufficiency of evidence for aiding and abetting the § 924(j) murder, while the 2255 (p.1-3) raised a Factual and Legal Innocence claim under the reasonable-doubt analysis enumerated in <u>United States v. Glenn</u>, 312 F.3d 58 (2d Cir 2002). <u>See</u> <u>Sanders v. United States</u>, 373 U.S. 1, 16 (1963)("[i]dentical grounds may often proved by different factual allegations...and [] may often be supported by different legal arguments, or couched in different language."). Petitioner is neither procedurally defaulted where Respondent waived its default defense for this claim. "Because procedural bar is not jurisdictional in the habeas context, a federal court is not required to raise it sua sponte; rather it is a defense that the State is obligated to raise and preserve if it is not to lose the right to assert the defense thereafter." <u>Jiminez v. Walker</u>, 458 F.3d 130, 140-41, n.8 (2d Cir 2006).

In <u>Glenn,</u> the Court held, "[i]f evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertained reasonable doubt." <u>Id</u> at. 70. Count Seven conviction rests on Knibbs unsupported testimony (Tr. 757:17) that Gunn found Grey's weapon, while overwhelming evidence established that Davis found the weapon. <u>See</u> Tr. 431:17-19; 1400:16-19; and Exhibit A of § 2255. Where the evidence for count Seven presented a theory that supports guilt [if] petitioner had found the weapon, and a theory that supports innocence [if] Davis had found the weapon, <u>Glenn</u> held that the jury had entertained reasonable doubt. Because it would not satisfy the Constitution to have the jury determine that petitioner probably found the weapon, the conviction cannot be sustained under the Fifth Amendment.

B. <u>The Murder Conviction Is Unconstitutional</u>
   <u>Where Verdict Form Constructively Amended</u>
   <u>Theory Of Liability Charged By Grand Jury</u>

Respondent did not address this claim, thus waived any objection. At trial, the Government sought petitioner's conviction on aiding and abetting liability, and Davis's conviction on principal liability for Count Seven. Under these circumstances, the court is required to determine upon what theory the jury verdict rests, and if the evidence does not support that theory, the court must reverse the conviction and sentence. <u>Griffin v. United States</u>, 502 U.S. 46, 116 L. Ed 2d

**2**

371. The issue here is not whether the aiding and abetting charged was set forth in the indictment as Respondent implies (Res. Br. 23), but whether the Verdict Form broadened the basis for conviction when it alters Count Seven as it relates to petitioner, and allowed the jury to convict for first degree principal. See United States v. D'Amelio, 683 F.3d 412, 416 (2d Cir 2012). Respondent argued that "the mere fact that the verdict form spoke only of the general crime of murder is immaterial," (Res. Br. 23), citing Standefer v. United States, 447 U.S. 10 (1980). While Standefer agreed in dicta that all participants charged under section 2(a) are punishable as principals, the Court carefully distinguished principals in four categories: First degree principals; Second degree principals; Accessories before the fact; and Accessories after the fact. Id at 20. The issue raised in Standefer has no bearing on this constructive amendment claim.

The "to wit" clause of the indictment had limited the Government to prove petitioner aided and abetted Davis in Grey's murder. The evidence against petitioner does not support the elements for first degree principal, and the Jury Verdict does not support aiding and abetting{second degree principal liability}. Respondent urges the court to uphold the conviction on a theory the grand jury did not charge against petitioner, nor supported by the evidence. The substantial likelihood that petitioner have been convicted of an offense other than that charged against him is evident, where the Verdict Form broadened the second degree principal liability, to first degree principal liability. See Stirone v. United States, 361 U.S. at 215-16 ("a court cannot permit a defendant

3

to be tried on charges that are not made in the indictment
against him."). This error has created a jurisdictional defect
that warrants habeas relief. See <u>Davis v. United States</u>, 417
U.S. 333, 343-344 (1974).

    C. <u>Petitioner Is Legally Innocent For Affecting</u>
       <u>Commerce By Attempted Robbery</u>

    The case doctrine does not bar litigation as Respondent
claimed. (Res. Br. 24-25). On appeal, [Gunn] challenged the
"insufficiency of the evidence" for the interstate nexus
element, while here, he raised a "No Evidence" Criterion claim
in light of <u>Thompson v. Louisville</u>, 362 U.S. 199 (1960), and
that he's "Legally Innocent" for affecting interstate
commerce. (Pet 2255, 8-9). Under the "No Evidence" Criterion,
the inference that Grey [may] have sent money outside New York
State is a "mere modicum" of evidence which failed the Fifth
Amendment "proof of guilt beyond a reasonable doubt" analysis
for the interstate nexus element. Respondent use of <u>Davis</u>,
328 Fed. Appx 701, 703-04 (2d Cir 2009) is misplaced, where,
in <u>Davis</u>, witnesses testified that they had previously
purchased Arizona marijuana from the victim. <u>Id</u>. at 702.
However, that type of evidence is nonexistent here. In
addition, Baldus's unrelated testimony on marijuana growth and
packaging, does not establish proof beyond a reasonable doubt
Grey's money went out of State. See Exhibit B of § 2255; and
<u>United States v. Davis</u>, 2d Cir No. 11-2325-cr, 8/14/13,
(decided after Gunn's Appeal)(holding that "[a]gent testimony
is not sufficient to satisfy federal jurisdictional

4

element."). The federal jurisdiction for Count Three rests on
hypothetical inferences where no evidence had established a
location for Grey's market. See Jackson v. Virginia, 443 U.S.
307 (1979)("the no evidence" doctrine of Thompson is an
appropriate standard of review to address habeas claims where
a defendant is convicted on a record entirely devoid of
evidentiary proof."). Petitioner is actual innocent for
affecting interstate commerce and count three must be
dismissed under the "No Evidence" criterion of Thompson.

    E. Section 924(j) Murder Conviction Is Infirm
        In Light Of Rosemond v. United States
        And United States v. Medina

    In Rosemond, 134 S. Ct 1240, 1243 (2014), the Supreme
Court addressed the issue of "what the Government must show
when it accused a defendant of aiding and abetting" a 924(c)
crime, and when the aider and abettor must know about the gun.
The Court lays out three distinct factors to meet the aiding
and abetting proof of guilt: 1) Foreknowledge about the gun;
2) Conduct during the offense as evidence of foreknowledge;
and 3) Foreknowledge as a term of art. The issue here, is
whether petitioner's foreknowledge of Davis's plan to use a
firearm to commit murder must relate to the murder weapon.
This claim should be reviewed in light of Rosemond, and
Medina, 32 F.3d 43 (2d Cir 1994). Respondent has abandoned
this claim, thus waived any objection. "Issues not
sufficiently argued...are considered waived." Yueqing Zhang v.
Gonzalez, 426 F.3d 540, 541, 545, n.7 (2d Cir 2005).

5

The <u>Medina</u> Court reversed a conviction for aiding and abetting the use of firearms, because the firearm Medina gave a coconspirator was never used in the predicate crime by other coconspirators. For Count Seven, <u>Rosemond</u> and <u>Medina</u> demands proof that petitioner had foreknowledge of Davis' intent to use Grey's firearm, and with that knowledge, facilitated the use of that firearm. Foreknowledge of Davis' plan to use his firearm to kill Grey is distinct from foreknowledge of Davis' plan to use Grey's firearm to commit the murder. Both elements of aiding and abetting Davis's use of [a] firearm that caused death must relate to the murder weapon. Thus, had petitioner handed Davis Grey's firearm, yet Davis used [his] firearm to kill Grey, the conviction would have been void. Advance knowledge and facilitation conduct must both relate to the murder weapon for § 924(j) and 2, a fact the Government failed to prove. Thus, petitioner is actual innocent of aiding and abetting the 924(j) murder in light of <u>Rosemond</u> and <u>Medina</u>.

I. <u>Jury Charge Is Improper Under Rosemond</u>

The aiding and abetting jury charge was improper under Rosemond because the jury was never instructed to make a determination on petitioner's advance knowledge of Davis' use of [the firearm] that caused death. This created a legal defect amounted to plain error that affected petitioner's substantial rights, and had an unfair prejudicial impact on the jury's determination. Rule 52(b), Fed. R. Cr. P.; <u>United States v. Young</u>, 470 U.S. at 16, n.14. This legal deficiency claim must be treated differently from the evidentiary

deficiency claim on appeal, <u>Garcia</u>, 992 F.3d at 416 (2d Cir),
and the "law of the case [does] not preclude petitioner from
seeking 2255 relief based on a change in the law that occurred
after his conviction was affirmed on direct appeal." <u>See</u>
<u>Davis</u>, 415 U.S. at 342 (1972).


POINT II.  COUNSELS WERE CONSTITUTIONALLY INEFFECTIVE


    A.  <u>Counsel Failure To Confront Klees Violated</u>

        <u>Petitioner's Confrontation Rights</u>


    Dinnerstein averred that it would have been
counterproductive to cross examine Klees, which would have
opened the door for damaging hearsay. (Dinn Aff'd, ¶s 10 &
12). However, no amount of hearsay could have caused any more
damage than Klees unchallenged testimony, presented without
limitation. Indeed, the court was also skeptic in allowing any
hearsay testimony from Klees to be admitted. <u>See</u> Tr. 1061.
Thus, counsel's failure to examine Klees deprived petitioner
his confrontation rights and a fair trial. Dinnerstein's
inadequate explanation for his failure to confront Klees
before the jury indicates a fundamental inability to
comprehend the prosecutions case. <u>See</u> <u>e.g.</u> Govt. closing (Tr.
1688)("The plastic ties were devastating proof that Gunn's
ties were the ones that were used in the Wickham Avenue
robbery").

I. <u>Counsel Deprived Petitioner His Confrontation</u>
   <u>Rights By Failure To Confront Knibbs</u>

Palma asserts that Knibbs' double homicide was
investigated and yielded no information (Palma Aff'd ¶1).
However, he provided no justification for not confronting
Knibbs on a shooting incident in Queens New York; a stabbing
incident from which the victim died; and the killing of a
political activist in Jamaica, which are acts known to
petitioner due to his acquaintance with Knibbs. See Exhibit C,
Pet 2255; <u>see also</u> <u>Eze v. Senkowski</u>, 321 F.3d 110, 112, (2d
Cir 2003)("[i]f certain omissions cannot be explained
convincingly as resulting in form of a sound trial strategy,
but instead arose from oversight, carelessness, ineptitude, or
laziness, we would find the quality of representation
sufficiently deficient to grant the writ"); <u>Davis v. Alaska</u>,
415 U.S. at 361 ("[t]he introduction of evidence of a prior
crime is thus a general attack on the credibility of the
witness"). Palma's error had removed truth seeking engine of
cross-examination that impaired the trial's reliability and
deprived petitioner his Confrontation rights.

B. <u>Palma's Summation Was Incompetent, Unreasonable</u>
   <u>And Constitutionally Deficient In Light Of</u>
   <u>Herring v. New York, 422 U.S. 853 (1975)</u>

Palma constructed his defense against the ineffective
assistance claim from facts never alleged, or alluded to in
the § 2255, stating Gunn suggested he argued contrary to the

October 28 statement. (Palma Affd ¶s 5 & 8), a claim refuted by the records, see{Tr. 1565:1-14; Tr. 1566:1-3}. Respondent adopted Palma's misstatement (Res. Op. 34) and phrased its argument to give the impression that petitioner had suggested that Palma argued contrary to the October 28 statement. The records also refuted Palma's claim that petitioner agreed with his trial strategy to inform the jury he went to the Wickham Avenue basement to commit a robbery with Davis, but not to murder Grey (Palma Affd, ¶ 5); see Tr. 1565-1566. Palma nor Respondent cited no reference to support their claim.

Respondent's claim that counsel had delivered an extensive and thorough closing argument and that counsel's choice of focusing on a defense theory to the murder based on Gunn's lack of intent to commit the murder, rather than on an alternative defense based on who found the murder weapon, was reasonable and strategic, (Res. Br. 35-36), lacks merit, and Respondent's characterization of Palma's summation is specious. First, the record shows that Palma's inept summation lacks sound strategy and was unreasonable when he abandoned all defenses against the elements of each offense; presented inflammatory statements to the jury, and conceded to petitioner's guilt for Count Three. Second, the case doctrine rejected the defense of lack of intent to commit murder. See Davis, 491 Fed. Appx at 224. The only strategic choice Palma made, was a choice to "lay back" while the Government meticulously argue its case for a conviction.

Palma's summation imposed upon the jury two issues to be considered, narrowing the jury's consideration to, 1) whether petitioner participated in the Elmont attempted robbery, and

9

2) whether he knew Davis would have killed Grey, and agreed.
Tr. 1730:2-13; Tr. 1731:18-21. He neglected to present an
adverse defense against Knibbs, and over petitioner's
objection, see{Tr. 1565:1-4}, conceded to Count Three's guilt,
see{Tr. 1736:17-21}, and inflamed the jury with evidence
unsupported by the record as follows:

> Remember, according to Mark Wright he was tied up, both hands
> and his ankles, with plastic straps, and he also testified that both
> Davis and Gunn were armed. (Tr. 1736:22-24)

> Davis was watching him, and Gunn, according to the testimony of
> Wright, is standing in the hall armed watching both rooms and that
> he supposedly runs into the room where Gary Grey was. (Tr. 1737:3-5).

> What Mark wright is saying is that when my client rushes into bedroom
> number 2, that he was able to run with his ankles tied with those plastic
> straps out of bedroom one. (Tr. 1737:25; 1738:1-2)

> ...and certainly, he wouldn't have let Mark Wright go had that been his
> attention. (Tr. 1738:14-15)

Wright did not identify petitioner at trial, which is
the reason it was requested of counsel to argue Count Three
interstate element, but allow the jury to draw its own
inference whether petitioner was present at Wickham. Palma
argued at a considerable length about Needham's letter to her
boyfriend (Tr. 1739-1755), but mounted no challenges against
the two critical interstate nexus evidence, viz, (1) the term
"money gone to market," where this phrase did not establish a
location outside the State, and (2) Baldus's testimony, where
Baldus noted he had no firsthand knowledge of facts of the
case. No defense was mounted against the Hobbs Act conspiracy;
the aiding and abetting elements for Count Seven; and the
marijuana conspiracy, and not once was an adverse defense
mounted against Knibbs unsupported testimony that Gunn found
Grey's firearm.

Contrary to Respondent's assertion (Res. Br. 35-36), the defense against "who found the murder weapon" was the strongest defense, a fact supported by the case doctrine. See Davis supra, at 223, held, "[t]he evidence showed that Gunn (1) knew in advance that Davis planned to kill Grey and (2) facilitated the killing by handing Davis the murder weapon." Respondent attempt to bolster its theory that counsel argued the intent defense is without merits. Palma's rambling, and disjointed summation cannot be considered within "an objective standard of reasonableness," Strickland, 466 U.S. at 688, because it performed none of the functions that summations are intended to fulfill in a criminal trial. Palma's summation did not "sharpen and clarify the critical issues." Herring, 422 U.S. at 862, nor were his decisions strategic.

Respondent urges the court not to second guess counsels strategy (Res. Br. 33). However, because Palma provided no explanation for his failure to address the critical issues raised, see Davis v. Alaska, 415 U.S. 308, 314 ("[i]ssues concerning the witness that went unchallenged, amounted to denial of the defendant's Sixth Amendment right to effective assistance of counsel"), the court is left with no other option but to second guess counsel's ill chosen decisions and conclude his performance was constitutionally deficient. See Eze v. Senkowski, 321 F.3d at 137 ("notwithstanding the rigors of the Strickland standard, counsel's inability to justify her actions by some plausible trial strategy could very well lead to the conclusion that her performance was constitutionally deficient.").

In Herring v. New York, 422 U.S. 853, 862 (1975), the

Supreme Court held, "[i]t can hardly be questioned that 'closing argument' serves to sharpens and clarify the issues for resolution by the trier of fact in a criminal case." And for the defense, closing argument is the [last chance] to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt." "In a criminal trial, which is in the end basically a factfinding process, no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment." In re Winship, 397 U.S. 354; Herring, 422 U.S. at 862. A competent attorney would have reminded the jury of overwhelming evidence demonstrating Davis found Grey's weapon, which would have eliminated petitioner's exposure to the facilitation conduct of aiding and abetting. A competent attorney would have raised a meaningful defense against all elements of the offenses, would not have falsely misled the jury that Wright testified against petitioner, nor conceded to his client's guilt. Even if Palma's deficient summation was the only basis for the Sixth Amendment claim, the Strickland tests has been satisfied. Strickland, 466 U.S. at 693-96). Palma's egregious summation left the jury with only one conclusion: that petitioner was guilty as charged.

C. Counsels Were Ineffective For Failure To
   Request Special Jury Charge For Murder Weapon

Counsel failure to seek special jury charge for aiding and abetting Davis' use of Grey's weapon was deficient performance, where, in light of Rosemond's advance knowledge

element and <u>Medina's</u> proof of facilitation of the subject
firearm, a special jury charge was necessary to prepare a
meaningful defense. It's only then, could the jury have
properly applied the law to petitioner's conduct of aiding and
abetting Davis' [use] of the firearm that caused Grey's death.


I. <u>Counsels Failure To Object Curative Charge</u>
   <u>Rendered Ineffective Assistance Of Counsel</u>


Contrary to Respondent that the curative instruction was
correct (Res. Br. 37), petitioner contends that the
instruction was too broad, because it allowed the jury to
consider [all] robberies elicited from Needham on direct
examination, <u>see</u> Tr. 1892:2-12. On direct, Needham admitted
committing about 40 robberies (Tr. 455:15-18, Tr. 456:11-13);
including robberies previously convicted for, (Tr. 495); and a
Commonwealth Avenue robbery (Tr. 492). The second curative
instruction may have had an injurious effect on the jury's
deliberation, <u>see</u> Tr. 1892:8-12, and counsels failure to
object upon petitioner's request, violated his rights to
effective assistance and to a fair trial.


D. <u>Counsels Failure To Challenge Brady</u>
   <u>Violation Was Deficient Performance</u>


Respondent reduced this ineffective assistance Brady
claim to a mere "failure to disclose witnesses identity."
(Res. Br. 38). This claim, however, is grounded on Agent

Zamaloff's Affidavit concerning interviews of the following
categories of witnesses: (1) Cooperating witnesses{plural},
(2) CW-2 and CW-3, (3) Other eyewitnesses{plural} who were
present at the Bronx homicide, and (4) Other witnesses{plural}
related to the events that occurred. The 3500 materials
accounted for three cooperating witnesses, Ronald Knibbs,
Donovan Francis, and Derrilyn Needham, and non-cooperating
witness, Mark Wright. Each category of witness is listed in
plural form, an average of eight witnesses. Footnote 1 of the
Affidavit stated, "CW-2 and CW-3 had already entered guilty
pleas" to date of Affidavit, 6/11/09). Needham is thereby
exempt from the CWs category, who pleaded guilty after
6/11/09. It is a fact that Needham and Knibbs were cooperating
witnesses, and Wright, [one of] the eyewitnesses, and even if
Knibbs is categorized as both cooperating witness and
eyewitness, though the Affidavit differentiated "cooperating
witnesses" from "eyewitnesses," and "eyewitnesses" from "other
witnesses," the Government's 3500 or Brady disclosure only
accounted for Knibbs, Needham, Francis, and Wright as
witnesses interviewed about the Bronx homicide. These four
known witnesses does not cover all four categories of
witnesses in Zamaloff's Affidavit. Counsels failed to renew
any Brady Materials request for these particularized
materials, or challenged the suppression of such as a Brady
violation.


    E. Counsels Failure To Raise Napue Violation
       Was Constitutionally Deficient

Respondent contends that Napue has no bearing on petitioner case, because Needham's cooperation agreement obligated her to tell the truth, and she was available for cross-examination (Res. Br. 39). However, this argument cannot cure the Napue violation, which focuses on the prosecution knowing use of perjured testimony, and failure to correct it. The proffer notes herein revealed that: Petrainne informed Mitchell that Grey has money. Mitchell passed the information to Needham, who talks with Petrainne about Davis. Petrainne approaches Needham with the job...and Needham called Davis with job. <u>See</u>{Knibbs Proffer attached to Pet Supp.}. It's evident that the Government knew of Needham's aggravated role in the Wickham Avenue robbery/murder, the main reason a death penalty submission was made against her. In <u>Banks v. Drekte</u>, 157 L. Ed 2d 1166 (2004), the Supreme Court held, "[a] witness true role in the offense was relevant to the jury assessment of the case," (quoting <u>Kyles v. Whitley</u>, 514 U.S. at 434). Because the Government's case was dependent on Needham's testimony, it was the prosecution obligation to correct Needham's false testimony that mitigated her true role in the Wickham Avenue offense. "[I]t is of no consequence that the falsehood bore upon the witness' credibility rather than directly upon defendant's guilt. A lie is a lie, no matter what is its subject, and, if it is any way relevant to the case, the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth." <u>Napue</u>, supra at 269; <u>see also</u> <u>Mills v. Scully</u>, 826 F.2d at 1195 ("It is sufficient if a government attorney knows about the false testimony, and no steps are taken to correct it").

Counsels failure to challenge Napue violation deprived petitioner of effective assistance and a fair trial.

F. <u>Counsels Failure To Object Inadmissible</u>
   <u>And Prejudicial Evidence In Light Of Rule</u>
   <u>403 And Kimmelman v. Morrison Was Deficient</u>

The Government presented Baldus to testify on the subject of marijuana growth, packaging and transportation. However, Robert Deleon had testified to those facts prior to Baldus' testimony, such as location marijuana came from, Tr. 235:4-8; Marijuana buds, stems, leaves, and scent, Tr. 236:9-15; Quantity, Tr. 236:2-3, and Packaging, Tr. 238:1-5. Baldus' testimony did not meet Rule 702(a) helpfulness criterion because the jury could have drawn its own conclusion that marijuana is grown outside the State, and trucked to New York. <u>See</u> <u>Castillo</u>, 924 F.2d 1227, 1233 ("[t]he district court erroneously admitted the testimony of the government's expert where the 'subject matter' of that testimony consisted of topics within the expected knowledge of the average juror-- such as the fact that drug dealers uses scales to weigh drugs, and that drugs may be kept in plastic bags or wrapped in tinfoil--and where an eye witness had already testify to those facts and their purpose"). The subject matter of Baldus' testimony was not beyond the ken of the jury who was capable of understanding the facts about marijuana and even a marijuana operation from news report, and Deleon's testimony. Baldus' admissibility did not satisfy Rule 702(d), where he had no knowledge of facts of the case. <u>See</u> <u>Castillo</u>, 924 F.2d

16

1233, 1234 ("guilt may not be inferred from conduct of unrelated persons."). Because the probative value of Baldus' expert testimony was substantially outweighed by the danger of unfair prejudice, counsels were obligated under the Sixth Amendment to seek exclusion of such evidence under Rule 403, Fed. R. Evid. Here, Baldus' testimony was presented only to bolster Knibbs testimonial phrase, "money gone to market," from which, the jury drew an improper inference that Grey's money was sent outside the State because all of Baldus's marijuana investigations consisted of marijuana that grew in Mexico and trucked to the East Coast. See Tr. 1691:10-18.

Respondent's claim that Knibbs testified that Grey's money had gone to market to purchase additional drugs (Res. Br. 42) and that Baldus's testimony did not bolster anything Knibbs said, is unpersuasive where, 1) the phrase "money gone to market" did not establish a location for Grey's alleged Market, in the absence of Baldus' prejudicial testimony, and, 2) Count Three's conviction was upheld in part on Baldus' testimony. It was counsels duty to seek exclusion of this testimony because it did nothing more than states legal conclusion, it was cumulative, and presented impermissible inference that Grey's marijuana came from Mexico, and the probative value was seriously outweighed by prejudice under Rule 403. Here, Baldus's evidence was central to the Government's case if it was suppressed or found inadmissible under 403. See United States v. Gonzalez, 399 Fed. App'x 641, 646 (2d Cir 2010)(holding, "because the evidence seized from

car was [not] central to the govt's case, if it had been
suppressed, due to overwhelming evidence that would
nonetheless support conviction...counsel's error [] was
therefore not "so serious as to deprive defendant of a fair
trial"). See also Kimmelman v. Morrison, 477 U.S. 365
(1986)(holding that "an attorney's failure to timely move to
suppress evidence during trial could be grounds for federal
habeas relief").

### G. PREJUDICE

Contrary to Respondent, that none of the alleged
instances of ineffective assistance would have in any way
changed that result," (Res. Br. 43), petitioner avers that he
has sufficiently demonstrated Strickland prejudice from
counsels deficient performances. Strickland, 466 U.S. at 694;
see also Kimmelman, 106 S. Ct at 2587. While Palma argued at
closing that the jury should consider whether petitioner knew
of Davis plan to kill Grey, and agreed to do so, he failed to
argue the points peculiar to petitioner's case, such as the
overwhelming evidence pointing to Davis as the person who
found Grey's firearm, a specific fact that could have
reasonably provided a different outcome. Palma did not provide
clarity to the jury that the phrase "money gone to market" did
not establish a location for Grey's alleged market, nor
reminded the jury that Baldus' testimony also established that
marijuana can be grown in New York, and Baldus had no
knowledge about Grey's alleged marijuana business. It's upon
these two pieces of evidence Count Three's conviction was
affirmed. Had counsels objected to Baldus' testimony under

403, there's a reasonable possibility that the Government's interstate nexus evidence for Count Three would have been diminished or nullified completely. The same effects could be said for counsel's failure to cross-examine Knibbs on prior bad acts to discredit his testimony. There can be no question that counsels inadequate performance deprived petitioner of his chance to present his case properly to the jury. See United States v. Cronic, 466 U.S. 648, 659 (1984)("[i]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversarial process itself presumptively unreliable"). "If no actual "Assistance" for petitioner's defense is provided, then the constitutional guarantee has been violated." Id. at 654. Counsels failure to exercise the skill and judgment and diligence of reasonably competent defense attorneys had seriously infected the entire trial proceeding, that altered the trial's outcome, and has sufficiently satisfied both Strickland prongs, and Cronic's presumption of prejudice. Respondent's argument that 39-witnesses testified, though only five witnesses testified against petitioner, is irrelevant to the Sixth Amendment claim, where the Supreme Court observed that "the constitutional rights of criminal defendants are granted to the innocent and the guilty alike." See Kimmelman v. Morrison, 477 U.S. at 380. The benchmark inquiry in evaluating [petitioner's] claim of ineffective assistance, is whether counsels performance "so undermined the proper function of the adversarial process" that it failed to produce a reliably just result." Strickland, 466 U.S. at 686. Because the right to

19

effective assistance has as its purpose the assurance of a fair trial, the right is not infringed unless counsels' mistakes call into question the basic justice of a defendant's conviction or sentence.

POINT III: PETITIONER'S BRADY RIGHTS WAS VIOLATED

Petitioner maintains his position on the Brady violation claim raised in the § 2255 petition (Pet 2255, p.28-31), and reiterated his argument that the Government deprived him of due process when it withheld interviews conducted with Cory Thompson, which became known for the first time during trial. The content of Thompson's interviews was critical to petitioner's defense against double jeopardy, where Thompson had made statements to Detective Clohessy that "Davis" was a member of the police impersonation crew. Likewise, had Thompson's statements been disclosed, petitioner could have subpoenaed him for trial concerning the Bronx homicide, to discredit Needham's false testimony.

Petitioner maintain his position on the sentencing claims, and reiterated that the court erred in not apply U.S.S.G. § 2X1.1(b)(1), which provides a three-level decrease to the base offense level if the crime was a conspiracy or an attempt. Had this application been applied, petitioner's base offense would have been reduced from 43 to 40. Petitioner maintained his position on all other § 2255 claims.

POINT V: AN EVIDENTIARY HEARING IS NECESSARY

    TO DISPENSE DISPUTED ISSUES


    A testimonial hearing is necessary where the ineffective assistance of counsel claims cannot be fully dispensed from counsels Affidavits that failed to fully address allegations against them. See Henry v. Scully, 918 F.Supp 693, 715 (S.D.N.Y. 1995)("Normally, before finding counsel inadequate, an evidentiary hearing would be held, at which questions of strategy would be addressed."). Palma provided no explanation for his shortcomings during trial, and his deficient summation. A hearing is also necessary to resolve both the Napue, and Brady violation claims, where (1) Respondent does not deny the allegations that the Government elicited perjured testimony from Needham concerning her true role in the Wickham Avenue offense, (2) clarity is needed for Needham's proffer notes to address the Napue claim, and (3) clarity is needed for the identity of each witness in Zamaloff's four categories of witnesses, where each category is listed in plural form, an average of two or more witnesses per category who were interviewed about the Bronx homicide, yet the Government's 3500 materials accounted for only four witnesses.

    Brady does not require a "strong" or "overwhelming" probability of a different outcome, only a "reasonable probability that the Government's suppression affected the outcome of the case." Coppa, 267 F.3d at 135. Here, the suppression of interviews of eyewitnesses and witnesses related to a murder is favorable material and could have reasonably put the whole case in a different light. See Leka,

**21**

v. Portuondo, 257 F.3d 89, 99 (2d Cir 2001)(evidence that undermines the testimony of eyewitnesses-who are central to a guilty verdict-is Brady material because it is "of a kind that would suggest to any prosecutor that the defense would want to know about it."). Wherefore, petitioner requests that the court grants an evidentiary hearing to resolve the claims raised. See Ciak v. United States, 59 F.3d 296, 306-07 (2d Cir 1995)(district court should have granted evidentiary hearing because Movant "alleged facts, which, if found to be true, would have entitled him to habeas relief."); United States v. Essig, 10 F.2d 968, 976 (3d Cir 1993)("Generally, if a prisoner's § 2255 raises an issue of material fact, the district court must hold a hearing to determine the truth of the allegations."). Petitioner's claim raised material facts, that if found to be true, would warrant habeas relief.

## Conclusion

WHEREFORE, Petitioner respectfully request that the court grants the relief sought.


Dated this 8th day of January, 2015.


Respectfully submitted

R-Gunn

Roderick Gunn (Pro-se)


**22**

#35

# CERTIFICATE OF SERVICE

I, Roderick Gunn _____ herby certify that I have served a true and correct
copy of the following: Petitioner's Reply To The United States
Opposition To §2255 Petition

Which is deemed filed at the time it was delivered to prison authorities for forwarding, Houston
v. Lack, 101L. Ed. 2d 245 (1988), upon the defendant/defendants and or his attorney/attorneys of
record, by placing same in a sealed, postage prepaid envelope addressed to:

Daniel Tracer (A.U.S.A.)
U.S. Attorney's Office
One Saint Andrew Plz.
New York, N.Y 10007

and deposited same in the United States Mail at: U.S.P. Atwater
P.O. Box 019001
Atwater, CA 95301

I declare, under penalty of perjury (Title 28 U.S.C. §1746), that the foregoing is true and correct.

Dated this 8th day of January , 20 15 .

R. Gunn

UNITED STATES PENITENTIARY, ATWATER
P.O. BOX 019000
ATWATER, CA 95001  DATE
The enclosed letter was processed through special mailing procedures
for forwarding to you. The letter has neither been opened nor
inspected...

<>55254-054<>
Roderick Gunn
United State Penitentiary
P.O. Box 019001
Atwater, CA 95301
United States

Legal Mail

<>55254-054<>
Court Clerk
500 Pearl ST
Attn: Hon. William Pauley
NEW YORK, NY 10007
United States

Pro Se
1/13/15



