UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
RODERICK GUNN,                                 :
                                                                    OPINION & ORDER
                Petitioner,    :
                                                                  14-CV-3228 (WHP)
        -against-                                                    :
                                                                  06-CR-0911 (WHP)
                                                                  :
THE UNITED STATES OF AMERICA,          16-CV-4887 (WHP)
                                                                  :
                Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, United States District Judge:

            Roderick Gunn moves pro se for habeas relief pursuant to 28 U.S.C. § 2255. Gunn argues that his criminal convictions should be vacated because they were contrary to the weight of the evidence, resulted from the ineffective assistance of counsel, and amounted to violations of his constitutional rights. On June 23, 2016, the Federal Defenders of New York, Inc. filed a placeholder habeas petition on behalf of Gunn in connection with the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015). That action is stayed pursuant to the Southern District's standing order for Johnson petitions. See Gunn v. United States, No. 16-CV-4887. Accordingly, this Opinion & Order addresses all of the issues raised by Gunn in Case Number 14-CV-3228. For the reasons that follow, Gunn's pro se petition is denied.

### BACKGROUND

            In 2002 and 2003, Roderick Gunn, Alton Davis, and Derrilyn Needham were part of a violent armed robbery crew that targeted drug dealers. (Trial Transcript at 375–78, 399–402, 454–55, 458, 461–62, 470–71, 473–80, 483–87, 767–72 ("Trial Tr.").) In 2002, acting on a tip from a drug dealer's girlfriend, they stole approximately $49,000 from a home. (Trial Tr. at

465–68.) Subsequently, they also attempted to rob a beauty parlor owned by a drug dealer who was stockpiling cash. (Trial Tr. 471–81.) Later that year, Davis and Needham stole $1,000,000 from a drug dealer in Maryland. (Trial Tr. at 487–88.) Gunn was originally part of that plan, but declined to participate on the day the group set out for Maryland to commit the robbery. (Trial Tr. at 485.)

During the fall of 2002, Gunn asked Needham to help him locate a drug dealer named Robert Deleon a/k/a "Bobby Sox." (Trial Tr. at 375.) Needham found Deleon in the Bronx, recorded his license-plate number, and traced it to an address in Elmont, New York. (Trial Tr. at 376–78.) Gunn scouted out the Elmont home in preparation for the robbery and asked Needham to contact Davis. (Trial Tr. at 381–84.) On October 31, 2002, Davis proceeded to Elmont as planned, but Gunn did not appear. (Trial Tr. at 384–86.) Nonetheless, Davis followed Deleon's young daughter into the home. A gunfight ensued. Deleon wounded Davis and then ran out of the house and down the street. (Trial Tr. at 246–47, 387–88, 394–95.) Davis pried open the bedroom door where Deleon's wife—Stephanie Laing—and Deleon's mother were hiding. (Trial Tr. at 109–11.) Davis shot and killed Laing. When his gun jammed, Davis fled the scene. (Trial Tr. at 109–12.)

In January 2003, Gunn, Davis, and Needham agreed to rob Gary Grey, a drug dealer living on Wickham Avenue in the Bronx. (Trial Tr. at 399–401.) At the time, Davis's 15-year-old niece, Petrianne Aldridge, was dating Grey. She told Davis that Grey was storing large amounts of cash in his apartment safe. (Trial Tr. at 399–400, 714, 755.) Fearing that Grey might retaliate against his niece, Davis told Needham the night before the robbery that he intended to kill Grey. (Trial Tr. at 403.) Needham called Gunn and explained the plan. (Trial Tr. at 402–03, 703–04, 1439.)

2

On the day of the robbery, Aldridge let Gunn and Davis into Grey's apartment, where they waited for him to return. (Trial Tr. at 402–04.) However, Mark Wright, a man who was staying with Grey, returned home first. (Trial Tr. at 1170–73.) Gunn and Davis hit Wright on the head, bound his hands and feet with plastic ties, and asked where the money was hidden. (Trial Tr. at 1170–73.) Ronald Knibbs, another participant in the robbery crew, arrived at Grey's apartment and began searching for the money. (Trial Tr. at 412, 753, 757, 1177.)

When Grey arrived, Davis and Gunn beat him and tied him up. (Trial Tr. at 1175–76.) Gunn found a handgun that Grey was carrying and gave it to Davis. (Trial Tr. at 757.) Grey opened the safe, explaining that it was empty because he had used the money to buy more marijuana. (Trial Tr. at 758–59.) Davis called Needham to explain the situation, and told Needham and Knibbs to go to the apartment of Grey's girlfriend to search for the money. (Trial Tr. at 414, 424–25, 869.) There, the robbers found approximately $3,000 in a water bottle.

Wright complained to Davis that the ties around his hands and feet were too tight. (Trial Tr. at 1178.) Davis attempted to replace them. When Davis began to adjust them, Grey attempted to break free. (Trial Tr. at 1178–79.) During the melee, Wright managed to escape from the house. (Trial Tr. at 1178–79.) Davis then executed Grey with Grey's own gun. (Trial Tr. at 1179, 1182, 431–32.)

In 2006, the Government indicted Gunn, Davis, Needham, and Knibbs, charging them with conspiring and attempting to commit the robberies, carrying and discharging firearms during the robberies, and conspiring to distribute marijuana. Gunn was convicted on Counts One, Three, Six, Seven, and Eight. Gunn was sentenced to life in prison and lifetime supervised release. (August 20, 2010 Sentencing Transcript at 37:11–16, 38:5–7.)

Gunn challenged his convictions and sentence in post-trial motions and in an appeal to the Second Circuit, which affirmed the convictions and sentence in its entirety. See United States v. Davis, 689 F.3d 179 (2d Cir. 2012), cert denied, 133 S. Ct. 1296 (2013); United States v. Davis, 491 F. App'x 219 (2d Cir. 2012), cert denied, 133 S. Ct. 1296 (2013).

## LEGAL STANDARD

A prisoner may seek collateral review of a federal conviction or sentence that was "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. Because collateral challenges conflict with "society's strong interest in the finality of criminal convictions," courts have established a high bar for defendants "to upset a conviction on a collateral, as opposed to direct, attack." Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010). Petitioners are barred by the "so-called mandate rule" from "re-litigation of issues already decided on direct appeal," including any issues "impliedly resolved by the appellate court's mandate." Yick Man Mui, 614 F.3d at 53. Additionally, any claim that the petitioner failed to assert on direct appeal is procedurally defaulted absent a showing of either (1) "cause" and "actual prejudice" or (2) "actual innocence." Bousley v. United States, 523 U.S. 614, 622 (1998). "[A]ctual innocence" means that the petitioner "in fact [did] not commit[] the crimes on which the calculation or imposition of [his] sentence was based." Campos v. Superintendent of Gowanda, No. 11-cv-3619, 2013 WL 106017, at *3 (S.D.N.Y. Jan. 7, 2013) (quoting Poindexter v. Nash, 333 F.3d 372, 381 (2d Cir. 2003)). And "technical" legal arguments do not establish "actual innocence." Campos, 2013 WL 106017, at *3 (citing Poindexter, 333 F.3d at 380). An "important exception" to the procedural default rule is that "a petitioner may bring an ineffective assistance of counsel claim whether or not the petitioner could have raised the claim on direct appeal." Yick Man Mui, 614 F.3d at 50.

4

Pro se submissions are held to "less stringent standards" than submissions drafted by attorneys. Bey v. City of White Plains, No. 10-civ-1887, 2011 WL 6019360, at *3 (S.D.N.Y. Nov. 15, 2011) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). This Court therefore "liberally construes" Gunn's pleadings "to raise the strongest arguments they suggest." Bey, 2011 WL 6019360, at *3 (quoting Berlin v. United States, 478 F.3d 489, 491 (2d Cir. 2007)).

DISCUSSION

This Court distills five arguments from Gunn's petition: (1) that Gunn is factually and legally innocent of the charges; (2) that his trial counsel was ineffective; (3) that his due-process and Sixth Amendment rights were violated; (4) that his convictions under the Hobbs Act were unconstitutional; and (5) that his firearms convictions rested on an unconstitutionally vague statute.[1]

I.   Factual and Legal Innocence

Gunn argues that his § 924(j)(1) conviction for discharge of a firearm that resulted in death is deficient because the "greater weight of the evidence pointed to Davis as the person who found the murder weapon." (Petitioner's Memorandum of Law in Support of Motion ("Pet."), ECF No. 2 at 2.) That argument is barred by the mandate rule because the Second Circuit concluded that the evidence demonstrated that Gunn "(1) knew in advance that Davis planned to kill Grey and (2) facilitated the killing by handing Davis the murder weapon." United States v. Davis, 491 F. App'x 219, 223–24 (2d Cir. 2012) (citing United States v. Heras, 609 F.3d 101, 107 (2d Cir. 2010)).

---

[1] As discussed, this Court reserves judgment on Gunn's Johnson arguments pending further briefing from the Federal Defenders.

5

Gunn also asserts that the § 924(j) charge on the verdict form was deficient because it charged "murder," not "aiding and abetting" a murder. (Pet. at 5–6.) Even if this argument were not procedurally defaulted, the verdict form was adequate, because Gunn's liability for aiding and abetting the murder is the same as that of a principal, see 18 U.S.C. § 2, and the court's instructions explained the nature of such aiding-and-abetting liability to the jury. (Trial Tr. at 1807–09, 1820:14–22.)

Gunn argues that his Hobbs Act conviction for the Wickham Robbery was legally deficient because the Government did not demonstrate that Grey's marijuana business affected interstate commerce, and because the court's jury instructions permitted consideration of activity that "possibly or potentially affected interstate commerce." (Pet. at 6–9.) The Second Circuit previously rejected these arguments, which are barred by the mandate rule. See Davis, 491 F. App'x at 221 ("With regard to the attempted Wickham robbery, the potential [interstate] effect was established by evidence that the victim was a marijuana dealer, whose money had recently 'gone to market' to purchase more drugs, Trial Tr. 758–59, coupled with expert testimony that trafficking quantities of marijuana are commonly produced outside New York State.") (citation omitted); Davis, 491 F. App'x at 222 ("[I]n view of the evidence . . . any such error [with respect to the interstate commerce charge] was harmless and did not affect the defendants' substantial rights or the fairness of the proceeding.").

Finally, Gunn argues that his § 924 firearms convictions were deficient because the jury was not advised that Gunn needed "advance knowledge" of Davis's intent to use a firearm against Grey under Rosemond v. United States, 134 S. Ct. 1240, 1243 (2014). As discussed, any sufficiency-of-the-evidence objection is barred by the mandate rule. Any objection to the jury charge is procedurally defaulted because it was not raised on appeal. And

Gunn has made no showing of "actual innocence" to disturb the jury's conclusion, based on ample evidence, that he committed the offenses. See Davis, 491 F. App'x, at 223–24.

Moreover, Gunn's argument has no basis in the record. In Rosemond, a district judge instructed a jury that the defendant could be convicted of violating § 924(c) if he knew that "his cohort used a firearm in the drug trafficking crime, and . . . knowingly and actively participated in the drug trafficking crime." Rosemond, 134 S. Ct. at 1252. The Supreme Court found that the instruction did not require the jury to find that the defendant had "advance knowledge" of his cohort's intent to use a firearm, and was therefore consistent with a scenario in which Rosemond "first learned of the gun when it was fired and . . . took no further action to advance the crime." Rosemond, 134 S. Ct. 1251–53. By contrast, the instructions given at Gunn's trial required proof of his "knowledge that a firearm would be used or carried in the commission of that crime." (Transcript at 1817:3–4.) (emphasis added).

II. Ineffective Assistance of Counsel Claims

Gunn's Petition asserts that his counsel's performance fell below the standard guaranteed by the Sixth Amendment. "[A] petitioner may bring an ineffective assistance of counsel claim whether or not the petitioner could have raised the claim on direct appeal." Yick Man Mui, 614 F.3d at 54. A petitioner must show that (1) his attorney's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for the deficiency in representation, the result of the proceeding would have been different—i.e., that he was prejudiced by his counsel's deficient performance. See Lynch v. Dolce, 789 F.3d 303, 311 (2d Cir. 2015) (citing Strickland v. Washington, 466 U.S. 668, 688, 689, 694 (1984)). To demonstrate such "prejudice," there must be a "probability sufficient to undermine confidence in the outcome" of the proceeding. Kovacs v. United States, 744 F.3d 44, 49–53 (2d

7

Cir. 2014). There is a strong presumption that counsel exercises reasonable judgment in all significant decisions. See Strickland, 466 U.S. at 690.

First, Gunn argues that it was improper for his counsel to refuse to cross-examine Gregory Klees, a firearms and tool mark examiner with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("BATF"). Klees testified regarding his opinion that plastic ties in Gunn's possession matched the ties found in the home where Gary Grey was killed. Gunn asserts that Klees should have been cross-examined on his lack of experience testing plastic ties, and on the fact that a plastic tie-making machine he examined was not the same one used to manufacture the ties at issue in the case. (Pet. at 17–18.)

Strategic decisions at trial do not generally support ineffective-assistance claims. See Dunham v. Travis, 313 F.3d 724, 732 (2d Cir. 2002). Decisions about "whether to engage in cross-examination, and if so what extent and in what manner" fall squarely within this rule. United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987). Here, it was not objectively unreasonable to avoid this line of questioning. Counsel cross-examined Klees at a Daubert hearing. (See Affidavit of Mitchell Dinnerstein ("Dinnerstein Aff."), ECF No. 11, at ¶ 12.) Counsel was hamstrung, however, from cross-examining Klees regarding Gunn's presence at the Wickham Robbery because of Gunn's own proffer, which admitted his participation. (See Affidavit of Richard Palma, ECF No. 14-1, at ¶ 5.) Accordingly, counsel avoided focusing on the plastic ties, arguing only that Gunn did not provide them. (See Dinnerstein Aff. at ¶ 10.) Moreover, in terms of prejudice, quibbling with the specific machine used to create the plastic ties would have been unlikely to disturb Klees's expert testimony about their similarity to the ties found at the Wickham Robbery. (See Trial Tr. at 1286–1310.)

Second, Gunn argues that counsel should have attacked Knibbs's credibility using a double-homicide that Knibbs allegedly committed in Massachusetts. (Pet. at 18–19.) Again, the decision not to cross-examine a witness on a specific matter is a strategic issue for counsel. See Nersesian, 824 F.2d at 1321. Gunn's counsel avers that no good-faith basis for cross-examination existed, as court-appointed investigator Ronald Dwyer looked into the alleged murders and found no connection to Knibbs. (Palma Aff. at ¶ 7.) Moreover, because Knibbs' testimony was largely focused on confirming Gunn's participation in the Wickham Robbery, any cross-examination was subject to the same concerns regarding Gunn's proffer statement. (Palma Aff. at ¶ 8.)[2]

Third, Gunn argues that counsel's summation was ineffective for focusing on a theory that Gunn aided and abetted a robbery, not a murder, rather than a theory that Gunn was never present during the Wickham Robbery. (Pet. at 19–20.) This was also a strategic decision designed to avoid contradicting Gunn's proffer statement. (See Palma Aff. at ¶ 5.) But Gunn's contention is also belied by the trial transcript, which shows that counsel put the Government to its proofs to establish that Gunn was present. (See Trial Tr. at 1733–35 ("Mark Wright . . . doesn't even identify Roderick Gunn as one of the two perpetrators . . . ."); Trial Tr. at 33-35 ("And when you consider [Derrilyn Needham's] version of the events . . . there are many sound reasons to reject her account."); Trial Tr. at 1735 ("If you believe that Mr. Gunn was at the Wickham apartment on January 21 . . . ."); Trial Tr. at 1736 ("If you believe [Gunn] was there, then the evidence shows the following . . . .") (emphasis added)). Counsel's statements were

---

[2] Gunn's motions to strike portions of the Palma and Dinnerstein affidavits, ECF No. 22, at 1–2; ECF No. 23, at 1–2, are denied. The affidavits are procedurally proper and not "redundant, immaterial, impertinent, or scandalous," Fed. R. Civ. P. 12(f). Rather, Gunn's argument goes to the merits of the ineffective-assistance claim.

9

also consistent with the ex parte hearing at which Gunn and his counsel resolved their dispute regarding the proposed summation.

> THE COURT: [Y]our attorney, if I am understanding correctly, is essentially telling the court that he believes he has a stronger argument to make to the jury that you are not permitting him to make, namely, that by your actions you permitted Mr. Wright to escape from Wickham Avenue and that, accordingly, you were not aiding and abetting any murder.
>
> DEFENDANT GUNN: I am not quarreling with your Honor but I am not stopping Mr. Palma from arguing that. All I ask Mr. Palma is in regard to Count 3, which is the attempted robbery, to argue the [element of] interstate nexus on his summation. In his summation he said that the evidence supports Mr. Gunn was present and what I asked of him is let the jury drawing that inference for themselves.
>
> In regard to Count 7 I am not stopping him to argue that. The government presented evidence, testimony, that Mr. Gunn allowed Wright to escape. I am not stopping counsel. I would want him to argue that. It's just in regard to Count 3. Let the jury draw their inference in regard to Count 3.

(Trial Tr. at 1565–67.) (emphasis added). Gunn's argument that counsel failed to argue that Gunn did not facilitate the use of the murder weapon is also contradicted by the record. (See, e.g., Trial Tr. at 1376 (arguing that it was implausible that "Mr. Gunn knew that Mr. Davis was going to kill Gary Gray or aid and abet Mr. Davis").)

Finally, Gunn argues that his counsel should have made three additional applications: (1) an objection to the interstate-commerce charge on the Hobbs Act robbery; (2) a demand for a separate discussion of aiding-and-abetting liability in connection with the § 924(j) charge on the Verdict Form; and (3) a request for a special instruction regarding the murder weapon. Failure to lodge these objections was not unreasonable. As discussed previously, the Second Circuit found that this Court's interstate-commerce clause instruction created no prejudicial error, and aiding and abetting was adequately explained in this Court's instructions to

the jury. Nor does Gunn articulate how his attorneys could have "nulli[fied]" the aiding-and-abetting murder charge by crafting a special instruction that would have excluded "Knibbs['] . . . testimony that Gunn handed Davis the murder weapon." (Pet. at 23.) To the contrary, Knibbs' testimony was admissible evidence that the jurors were entitled to rely on, as the Second Circuit found. See Davis, 491 F. App'x at 223–24.

III. Fifth and Sixth Amendment Violations

Gunn asserts that he was denied his Fifth Amendment due-process rights and Sixth Amendment right to a fair trial because (1) prosecutors failed to disclose material exculpatory evidence that could have been employed in his case; and (2) his sentence failed to reflect the conduct for which the jury found him guilty.

1. Alleged *Brady* Violation

Gunn claims that the Government ignored his requests for documents relating to (1) a robber with knowledge of the Elmont and Wickham robberies, (2) Petrianne Aldridge, and (3) certain facts relating to the investigation by Agent Zamaloff. He asserts that such evidence would have revealed "Needham's true role in the robbery/murder offenses," and minimized the roles played by Gunn and Davis.

"[T]he Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." United States v. Coppa, 267 F.3d 132, 139 (2d Cir. 2011) (citing Brady v. Maryland, 373 U.S. 83 (1963)). Evidence is material to guilt or punishment if it creates "a 'reasonable probability' that a different verdict would have resulted from disclosure of the information that the defendant claims was suppressed." United States v. Rodriguez, 496 F.3d 221, 227 (2d Cir. 2007) (quotation omitted). Gunn's Brady arguments were considered and rejected by the Second

11

Circuit, and are therefore barred by the mandate rule. See United States v. Davis, 491 F. App'x 219, 225 (2d Cir. 2012) ("We have considered the parties' other arguments, including the remaining claims raised in Gunn's pro se supplemental brief, and we conclude that they are without merit.").

In any event, even if Gunn's Brady claims were not procedurally barred, they would be meritless. Evidence is not "suppressed" under Brady where, as here, "the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence." United States v. Paulino, 445 F.3d 211, 225 (2d Cir. 2006) (internal quotation marks omitted). Gunn's counsel devoted the bulk of his closing argument to emphasizing the very claims Gunn now asserts he was precluded from advancing: that Needham orchestrated the charged robberies and murders, and that Gunn was merely a pawn. (See, e.g., Trial Tr. at 1729–55.)

    2. Alleged *Apprendi* and *Alleyne* Violations

Gunn also asserts that his sentence violated Fifth and Sixth Amendment restrictions on judicial factfinding during sentencing. See Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt."); Alleyne v. United States, 133 S. Ct. 2151, 2163–64 (2013) (concluding that increase of penalty beyond mandatory minimum must also be "found by the jury beyond a reasonable doubt"). Importantly, however, Apprendi and Alleyne do "not mean that any fact that influences judicial discretion must be found by a jury"—only those that increase the penalties available for a particular crime, either by raising the minimum sentence or the maximum. Alleyne, 133 S. Ct. at 2163.

Gunn argues that the court "exceeded its authority" by imposing twenty years on Counts One and Three, forty years on Count Eight, and life imprisonment on Count 7, of which Count Six was a lesser-included offense. Because each of these sentences was below or equal to the statutory maximum for the charged crimes, see 18 U.S.C. §§ 924(c), (j); 18 U.S.C. § 1951; 21 U.S.C. §§ 841, 846, Apprendi is inapplicable.

3. Due-Process Challenges to the 18 U.S.C. § 924(j) Sentencing Range

Gunn also argues that the sentencing range for a Section 924(j) violation—"any term of years" or "life" in non-capital cases—is unconstitutionally vague. (Pet. at 33.) "A penal law is void for vagueness if it fails to define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited or fails to establish guidelines to prevent arbitrary and discriminatory enforcement." City of Chicago v. Morales, 527 U.S. 41, 64–65 (1999). To the extent that Gunn objects to the phrase "any term of years" as vague, such phrase has no impact on the substance of the convicted offense. See Morales, 527 U.S. at 64–65 (opinion of O'Connor, J.). To the extent Gunn argues that § 924(j) confers excessive discretion in sentencing, the Supreme Court has repeatedly rejected that as a basis for a constitutional challenge. See, e.g., Rita v. United States, 551 U.S. 338, 379 (2007) ("[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end.") (citing Dorszynski v. United States, 418 U.S. 424, 431 (1974)).

4. Sentencing Guidelines Calculation

Gunn asserts that his conviction under § 924(c) should have been subsumed as a lesser-included offense of § 924(j) for sentencing purposes. See United States v. Parkes, 497 F.3d 220, 234 (2d Cir. 2007). It was. (See Transcript of Sentencing at 38 ("The Section 924(c) offense charged in Count Six is a lesser-included offense of the 924(j) offense charged in Count

Seven. . . . [T]his Court finds that any sentence for the 924(c) offenses for Mr. Gunn is also necessarily subsumed within the 924(j) sentence.").

Gunn also contends that he should have received a three-point offense-level reduction for being convicted of a "conspiracy, or an attempt." See U.S.S.G. § 2X1.1. But it was the § 924(j)(1) firearms violation, not the conspiracy or attempt charges, that produced the offense level of 43 (and the guidelines range of life imprisonment). Accordingly, Gunn was not entitled to a three-point offense-level reduction on that score. See U.S.S.G. § 2A1.1, Appendix A, at 549; August 11, 2010 Pre-Sentence Report, at 15. Indeed, even if he had received such a reduction, the sentencing range would still have included life imprisonment. (See Sentencing Memorandum, 06-cr-911, ECF No. 202, at 4.)

IV. Constitutionality of the Hobbs Act Prosecution

Gunn argues that the Hobbs Act is an unconstitutional interference with powers traditionally reserved to the states. This argument is procedurally defaulted because it was not raised on appeal, and Gunn offers no explanation for having failed to raise it. See, e.g., United States v. Thorn, 659 F.3d 227, 234 (2d Cir. 2011).

Moreover, Gunn's argument is meritless. The Hobbs Act was enacted pursuant to the Interstate Commerce Clause. See United States v. Culbert, 435 U.S. 371, 376 (1978). As other courts have repeatedly concluded, the Hobbs Act is a constitutional exercise of that power. See, e.g., United States v. Clausen, 328 F.3d 708, 710 (3d Cir. 2003) (rejecting renewed argument that the Hobbs Act is unconstitutional following United States v. Morrison and United States v. Lopez); United States v. Jarrett, 705 F.2d 198, 203 (7th Cir. 1983) ("[T]he Hobbs Act is within the power of Congress and does not contravene the Tenth Amendment.").

Finally, Gunn argues that the Government lacked Article III standing to bring this criminal case against him. However, an "injury to the United States—[including] the injury to its sovereign arising from violation of its laws" suffices to support a criminal lawsuit by the Government. <u>Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens</u>, 529 U.S. 765, 771 (2000).

## CONCLUSION

The arguments advanced in Gunn's habeas petition in Case No. 14-CV-3228 are rejected. Gunn's motion for an evidentiary hearing is denied because his ineffective assistance of counsel claims are belied by the record. <u>See</u> <u>Puglisi v. United States</u>, 586 F.3d 209, 213 (2d Cir. 2009) (citing 28 U.S.C. § 2255(b)). This Court reserves judgment on Gunn's arguments pursuant to <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015) in Case No. 16-CV-4887, pending further briefing from the Federal Defenders of New York. The Clerk of Court is directed to terminate Case No. 14-CV-3228 and mark that case as closed. The Clerk of Court is directed to mail a copy of this Opinion and Order to the Federal Defender representing Gunn in Case No. 16-CV-4887.

Dated: March 7, 2017
      New York, New York

SO ORDERED:

_____
      WILLIAM H. PAULEY III
              U.S.D.J.